# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| PARADISE CANYON, LLC, | Case No.: 2:07-cv-1701-RLH-GWF |
| Plaintiff, | **O R D E R** |
| vs. | (Motion for Preliminary Injunction–#9; Motion to Dismiss–#18) |
| INTEGRA INVESTMENTS, LLC, a Utah limited liability company, and MESQUITE 73, LLC, a Utah limited liability company, | |
| Defendants. | |

      Before the Court is Plaintiff Paradise Canyon, LLC's ("Paradise Canyon") **Motion for Preliminary Injunction** (#9), filed January 15, 2008. The Court has also considered Defendants Integra Investments, LLC and Mesquite 73, LLC's (collectively "Integra") Opposition (#15), filed February 7, 2008, and Paradise Canyon's Reply (#20), filed February 21, 2008. In addition, the Court conducted a hearing on this Motion on March 13, 2008.

      Also before the Court is Integra's **Motion to Dismiss Plaintiff's First Claim for Relief (False Advertising)** (#18), filed February 13, 2008. The Court has also considered Paradise Canyon's Opposition (#22), and Integra's Reply (#23), filed March 6, 2008.

/

**BACKGROUND**

Paradise Canyon is the owner and operator of the Wolf Creek Golf Club in Mesquite, Nevada. The Wolf Creek Golf Club is one of the most prominent businesses in Mesquite and was ranked #25 by Golf Digest in "America's 100 Greatest Public Golf Courses 2007–08" and #31 by Golf Digest in "America's 50 Toughest Courses." Paradise Canyon holds four federal trademark registrations in conjunction with the Wolf Creek Golf Club: (1) WOLF CREEK, U.S. Reg. No. 3,010, 874 ("Wolf Creek Mark"), for arranging and conducting golf competitions, entertainment in the nature of golf tournaments, golf club services, and golf courses; (2) WOLF CREEK VACATIONS, U.S. Reg. No. 3,257,731, for travel agency services, namely, making reservations, and booking for temporary lodging, restaurants and meals, resort lodging, hotel, bar, and restaurant services; (3) TERRACE AT WOLF CREEK, U.S. Reg. No. 2,959,796, for restaurant, bar, and lounge services; and (4) TERRACE AT WOLF CREEK (and Design), U.S. Reg. No. 2,983,173, for restaurant, bar, and lounge services. It also holds two Nevada trademark registrations: (1) WOLF CREEK, Nev. Reg. No. 36,346 ("Nevada Wolf Creek Mark"), for golf course services; and (2) WOLF CREEK, Nev. Reg. No. 36,345, for clothing.

Integra owns a thirty-three acre parcel of land adjacent to the Wolf Creek Golf Club. The previous owners of the land attempted to develop a residential community named Wolf Creek Estates, but stopped after Paradise Canyon sued them in this Court in the prior case 2:05-cv-462-RLH-RJJ. As a result of that litigation, the previous owners stipulated to a permanent injunction that enjoined them from using the Wolf Creek Mark or promulgating misleading advertising that implied an association between the Wolf Creek Golf Club and the residential development.

Integra is now developing its own residential community adjacent to the Wolf Creek Golf Club named Hidden Wolf. Integra's advertisements for Hidden Wolf prominently and predominately display photographs of the Wolf Creek Golf Course and highlight the development's proximity to the Wolf Creek Golf Club. One advertisement states:

> WORLD-CLASS GOLFING . . . *in your own backyard*. If you've had the chance to play golf at the Wolf Creek Golf Club in Mesquite, you certainly understand why it's consistently rated as one of the best and most challenging golf courses in America. Wouldn't you love to play this amazing course everyday – just by stepping outside your door? Well now you can. Hidden Wolf is an exclusive residential community at the peak of the golf course that features exquisite custom home sites, stunning surroundings and proximity to unparalleled recreation.

(Am. Compl. Ex. 7.) The advertisements also contain a stylized wolf head, which is similar to the stylized wolf head in the Wolf Creek Mark.

## DISCUSSION

**I.     Motion to Dismiss**

Fed. R. Civ. P. 12(b)(6) provides that a party may move to dismiss a claim for "failure to state a claim upon which relief can be granted." In ruling on a 12(b)(6) motion, a court must examine the complaint to determine whether it contains sufficient factual allegations "to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1965 (2007). All factual allegations set forth in the complaint "are taken as true and construed in the light most favorable to [p]laintiff[]." *Epstein v. Wash. Energy Co.*, 83 F.3d 1136, 1140 (9th Cir. 1999). However, a court does not assume the truth of legal conclusions merely because the plaintiff casts them in the form of factual allegations. *Warren v. Fox Family Worldwide, Inc.*, 328 F.3d 1136, 1139 (9th Cir. 2003).

Integra challenges the sufficiency of Paradise Canyon's false advertising claim. It contends that Paradise Canyon does not have standing to bring a claim for false advertising under 15 U.S.C. § 1125(a)(1)(B) because Integra's housing development and Paradise Canyon's golf club compete in different markets, and consequently, Integra and Paradise Canyon are not direct competitors. Moreover, Integra argues that even if Paradise Canyon has standing, its claim is legally deficient because Integra's advertisements are not false, misleading, or confusing. The Court analyzes each of these arguments in turn.

/

/

A.     Standing

The Ninth Circuit has held that different causes of action alleged under the Lanham Act have different standing requirements. *Jack Russell Terrier Network of N. Cal. v. American Kennel Club, Inc.*, 407 F.3d 1027, 1037 (9th Cir. 2005). Under the "false advertising" prong— § 1125(a)(1)(B)— "in order to satisfy standing the plaintiff must allege commercial injury based upon a misrepresentation about a product, and also that the injury was 'competitive,' i.e., harmful to the plaintiff's ability to compete with the defendant." *Barrus v. Sylvania*, 55 F.3d 468, 470 (9th Cir. 1995). In its Complaint, Paradise Canyon alleges that it will suffer monetary loss and harm to its business reputation and goodwill as a result of Integra's allegedly false advertising. (Am. Compl. ¶ 30.) Moreover, it states, "Plaintiff's ability to develop its own residential real estate community on the Wolf Creek Golf Course, or partner with another party to do so, will be irreparably harmed." (*Id.*) It also alleges "Paradise Canyon has discussed partnerships with other Mesquite home builders or, Paradise Canyon could build homes within its Wolf Creek Golf Club." (*Id.* ¶ 12.)

These allegations satisfy the standing requirements of § 1125(a)(1)(B) sufficient to overcome Integra's Motion to Dismiss. First, Paradise Canyon alleges a commercial injury—both monetary and damage to its reputation and goodwill—as a result of Integra's advertising that purports to falsely associate Hidden Wolf with the Wolf Creek Golf Club. Second, Paradise Canyon alleges a competitive commercial injury in that Integra's advertising harms Paradise Canyon's own ability to develop, or to partner with another builder to develop, a residential community that would also claim an association with the Wolf Creek Golf Club. Under the liberal Rule 12(b)(6) standard, Paradise Canyon has alleged a sufficient injury to overcome Integra's Motion to Dismiss. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992) ("[a]t the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice" to demonstrate injury for standing); *Williams v. Boeing Co.*, — F.3d —, 2008 WL 509229, *3 (9th Cir. Feb. 27, 2008).

4

### B. False Advertising

The elements of a false advertising claim are: "(1) a false statement of fact by the defendant in a commercial advertisement about its own or another's product; (2) the statement actually deceived or has the tendency to deceive a substantial segment of its audience; (3) the deception is material, in that it is likely to influence the purchasing decision; (4) the defendant caused its false statement to enter interstate commerce; and (5) the plaintiff has been or is likely to be injured as a result of the false statement, either by direct diversion of sales from itself to defendant or by a lessening of the goodwill associated with its products." *Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1139 (9th Cir. 1997). "To demonstrate falsity . . . a plaintiff may show that the statement was literally false, either on its face or by necessary implication, or that the statement was literally true but likely to mislead or confuse consumers." *Id.*

Integra contends that its statements regarding the proximity and relatedness of its development to the Wolf Creek Golf Club constitute mere puffery. "Puffing is exaggerated advertising, blustering, and boasting upon which no reasonable buyer would rely and is not actionable under [§ 1125(a)(1)(B)]." *Id.* (quoting 3 J. Thomas McCarthy, *Trademarks and Unfair Competition* § 27.4[4][d] at 27–52 (3d ed. 1994)). Puffery induces consumer reliance with general assertions rather than specific ones. *Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv. Inc.*, 911 F.2d 242, 246 (9th Cir. 1990). Here, Integra's advertisements are not puffery because they specifically attempt to create an association with the Wolf Creek Golf Club. While some aspects of the advertisement would be considered puffery—e.g. "IT'S THE PERFECT SETTING FOR YOUR NEW HOME," "features exquisite custom home sites, stunning surroundings and proximity to unparalleled recreation"—other elements go beyond mere puffery and deceptively represent an association with Wolf Creek Golf Club—e.g. "If you've had the chance to play golf at Wolf Creek Golf Club in Mesquite, you certainly understand why it's consistently rated as one of the best and most challenging golf courses in America. Wouldn't you love to play this amazing course everyday – just by stepping outside your door? Well now you can." (Am. Compl. Ex. 7.)

Consequently, Paradise Canyon has sufficiently alleged a claim for false advertising. While none of the statements in Integra's advertising are "literally false," several of the statements are "literally true but likely to mislead or confuse consumers." *Southland Sod*, 108 F.3d at 1139. Considering the "full context" of Integra's advertising, *id.*, whose most dominant features are pictures of Wolf Creek golf course, the statements falsely suggest that residents of the Hidden Wolf development will have special access to the Wolf Creek Golf Club. Such advertising has the tendency to deceive potential buyers to consider purchasing a home at Hidden Wolf because they would believe they were also purchasing access privileges to the Wolf Creek Golf Club. That deception is material, because customers in Hidden Wolf's target market would be more likely to purchase a home with access privileges to Wolf Creek Golf Club than they would without such privileges. Integra's advertising has entered interstate commerce via the mails and the Internet. Lastly, Paradise Canyon is likely to suffer monetary injury and loss of business good will and reputation because other residential developers will be less likely to partner with Paradise Canyon because of a perceived loss of exclusivity rights, and deceived customers might improperly direct their frustrations at the Wolf Creek Golf Club. Accordingly, Paradise Canyon has sufficiently alleged a claim for false advertising under § 1125(a)(1)(B), and as such, the Court denies Integra's Motion to Dismiss Plaintiff's First Claim for Relief (False Advertising).

## II. Motion for Preliminary Injunction

In order to obtain a preliminary injunction, Paradise Canyon must satisfy either one of two tests. Under the first test, Paradise Canyon must show: (1) it will suffer irreparable injury if injunctive relief is not granted, (2) it is likely to prevail on the merits, (3) Integra will not be harmed more than Paradise Canyon will be helped by the injunction, and (4) granting the injunction is in the public interest. *Stanley v. Univ. of S. Cal.*, 13 F.3d 1313, 1319 (9th Cir. 1994) (quoting *Martin v. Int'l Olympic Comm.*, 740 F.2d 670, 674–75 (9th Cir. 1984)). Alternatively, Paradise Canyon must demonstrate: (1) a combination of probable success on the merits and the possibility of irreparable injury, or (2) the existence of serious questions going to the merits and

1  the balance of hardships tips sharply in its favor. *Stanley*, 13 F.3d at 1319; *Vision Sports, Inc. v.*
2  *Melville Corp.*, 888 F.2d 609, 612 (9th Cir. 1989). Moreover, in trademark infringement or unfair
3  competition claims, "irreparable injury may be presumed from a showing of likelihood of success
4  on the merits." *GoTo.com Inc. v. Walt Disney Co.*, 202 F.3d 1199, 1205 n.4 (9th Cir. 2000);
5  *Vision Sports*, 888 F.2d at 612 n.3. This presumption effectively conflates the inquiry into the
6  single question of whether Paradise Canyon has shown a likelihood of success on the merits.
7  *GoTo.com*, 202 F.3d at 1205 n.4.
8       Paradise Canyon asserts six claims in its Amended Complaint: (1) false advertising
9  under 15 U.S.C. § 1125(a)(1)(B); (2) false designation of origin under 15 U.S.C. § 1125(a)(1)(A);
10  (3) trademark infringement under 15 U.S.C. § 1115; (4) trademark infringement under Nev. Rev.
11  Stat. § 600.420; (5) deceptive trade practices under Nev. Rev. Stat. § 598.0915; and (6) common
12  law trademark infringement. Each of the six claims independently provides authority for this
13  Court to issue a preliminary injunction. *See* 15 U.S.C. § 1116; Nev. Rev. Stat. § 600.430; Nev.
14  Rev. Stat. § 598.0979; *Sobol v. Capital Mgmt. Consultants, Inc.*, 726 P.2d 335 (Nev. 1986).
15  Because the Court finds that Paradise Canyon is likely to succeed on the merits of its federal
16  trademark infringement and false designation of origin claims, the Court does not analyze Paradise
17  Canyon's other claims for false advertising, state and common law trademark infringement, and
18  state unfair competition. First, however, the Court addresses Integra's equitable defense of
19  unclean hands.
20       **A.**    **Unclean Hands**
21       In its Opposition, Integra argues under the traditional four-prong test that it will be
22  more harmed than Paradise Canyon will be helped if the Court issues an injunction. It claims that
23  it presented the Hidden Wolf name and advertising materials to Paradise Canyon before it began
24  promoting the residential development. It further claims that Paradise Canyon failed to object to
25  the proposed name and mark. Consequently, if the Court issues an injunction, Integra claims it
26  will be forced to rebrand the development at significant cost, which could have been avoided had

Paradise Canyon objected immediately. In a footnote to these claims, Integra argues that Paradise Canyon's failure to object at that early stage means that Paradise Canyon now comes before the Court with unclean hands, and as such, Paradise Canyon is not entitled to injunctive relief. Moreover, at the March 13, 2008, Hearing, Integra asserted unclean hands as a focal point of its oral argument.

The Court has reviewed the pre-litigation correspondence between the Parties that Paradise Canyon submitted with its Motion for Preliminary Injunction. (*See* Decl. of Jason Firth in support of Mot. for Prelim. Inj. Ex. 13, Ex. 14.) It has also evaluated the Parties representations at the March 13, 2008, Hearing about what occurred prior to the litigation, as well as Paradise Canyon's Hearing Exhibit of the proposed advertising. The Court finds that even if Paradise Canyon failed to adequately object at the pre-litigation presentation, Integra's actual advertising material is substantially different than what it previously presented to Paradise Canyon. While the proposed advertising contained the Hidden Wolf Mark, the two-page spread contained only a single identifiable picture of the Wolf Creek Golf Club that occupied less than one-eighth (1/8) of one page. Further, while it listed the development's proximity to the Wolf Creek Golf Club, it also described in great detail other features of the development, including its proximity to seven other Mesquite golf courses, which it lists by name. In its first actual advertisement, however, approximately eighty percent (80%) of the advertisement is a picture of the Wolf Creek Golf Club, with the Hidden Wolf Mark boldly and prominently displayed on top of the picture. After the picture of the Wolf Creek Golf Club and the Hidden Wolf Mark, the next most prominent feature of the advertisement is the slogan, "WORLD-CLASS GOLFING . . . *in your own backyard.*" The focus of this advertisement is almost exclusively the Wolf Creek Golf Club. Consequently, the Court is at pains to find that Paradise Canyon's alleged failure to object to the proposed advertising would preclude it from seeking injunctive relief when Integra's actual advertising substantially differs from the proposed advertising. The actual advertising associates the Hidden

1  Wolf Mark and Hidden Wolf Development with the Wolf Creek Golf Club. Accordingly, the
2  Court finds no basis to preclude injunctive relief.

3      **B.  Federal Trademark Infringement and False Designation of Origin**

4      "To establish a trademark infringement claim under [15 U.S.C. § 1114] or an unfair
5  competition claim under [§ 1125(a)(1)(A)], [Paradise Canyon] must establish that [Integra] is
6  using a mark confusingly similar to a valid, protectable trademark of [Paradise Canyon's]."
7  *Brookfield*, 174 F.3d at 1046. The basic test is "whether a 'reasonably prudent customer' in the
8  marketplace is likely to be confused as to the origin of the good or service bearing one of the
9  marks." *Dreamwerks Prod. Group., Inc. v. SKG Studio*, 142 F.3d 1127, 1129 (9th Cir. 1998). The
10 Ninth Circuit has also held that initial interest confusion is actionable as trademark infringement.
11 Initial interest confusion is the "use of another's trademark in a manner calculated 'to capture
12 initial consumer attention, even though no actual sale is finally completed as a result of the
13 confusion.'" *Brookfield*, 174 F.3d at 1062 (quoting *Dr. Seuss Enters., L.P. v. Penguin Books USA,*
14 *Inc.*, 109 F.3d 1394, 1405 (9th Cir. 1997)).

15     In evaluating the likelihood of confusion, including initial interest confusion, courts
16 look to the following factors for guidance: (1) the strength of the mark, (2) the proximity of the
17 goods, (3) the similarity of the marks, (4) the evidence of actual confusion, (5) the marketing
18 channels used, (6) the type of goods and the degree of care likely to be exercised by the purchaser,
19 (7) the defendant's intent in selecting the mark, and (8) the likelihood of expansion of the product
20 lines. *AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341, 348–49 (9th Cir. 1979), *abrogated in part on*
21 *other grounds by Mattel, Inc. v. Walking Mountain Prod.*, 353 F.3d 742 (9th Cir. 2002); *see also*
22 *Interstellar Starship Servs., Ltd. v. Epix, Inc.*, 304 F.3d 936, 942 (9th Cir. 2002) (applying
23 *Sleekcraft* factors to initial interest confusion determination). The test is pliant and some factors
24 may be more important than others, but a determination should not rest on a single factor alone.
25 *Jada Toys, Inc. v. Mattel, Inc.*, — F.3d —, 2008 WL 450891, *2 (9th Cir. Feb. 21, 2008).
26 /

### 1. Strength of the Mark

The strength of a mark is determined by its distinctiveness,[1] with marks often classified in the following categories by increasing distinctiveness: (1) generic, (2) descriptive, (3) suggestive, (4) arbitrary, and (5) fanciful. *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 768 (1992). Fanciful, arbitrary, and suggestive marks are inherently distinctive and afforded strong protection, while descriptive and generic marks must acquire secondary meaning to receive protection. *Official Airline Guides, Inc. v. Churchfield Publ'ns, Inc.*, 6 F.3d 1385, 1390–91 (9th Cir. 1993). A fanciful mark is words or phrases invented solely to function as a trademark. *Id.* at 1390. An arbitrary mark is an arbitrary arrangement of common words that are non-descriptive of the good or service. *Id.* A suggestive mark requires an imaginative step to make a connection between the mark and an attribute of the product. *Id.* at 1391. A descriptive mark does not inherently identify a particular source, but instead merely describes the product or service. *Id.*

Here, Paradise Canyon's federally registered Wolf Creek Mark is an arbitrary mark in conjunction with golfing and restaurant services in Mesquite. The area in which the golf course is situated is known as Paradise Canyon, and Wolf Creek seems to have been purely invented by the Plaintiff with no obvious connection to the area. While a waterway does run through the golf course, it was created artificially by Paradise Canyon and there is no evidence that it is named Wolf Creek. Nevertheless, the Court does recognize that Wolf Creek, while arbitrary, is not a particularly strong mark. *See* 2 J. Thomas McCarthy, *Trademarks and Unfair Competition* § 11:14 (4th ed. 2007). But, the Court finds that the course's national rankings in Golf Digest is evidence that the Wolf Creek Mark has accumulated good will and secondary meaning so as to merit greater protection. Consequently, this factor favors Paradise Canyon.

/

---

[1] Distinctiveness "is the capacity of a mark to distinguish a product or service that emanates from one source, from the products or services emanating from other sources." 74 Am. Jur. 2d *Trademarks and Tradenames* § 33.

AO 72
(Rev. 8/82)

### 2. Proximity of the Goods

The Court finds this factor highly relevant because the Wolf Creek Golf Club and the Hidden Wolf Development are adjoining properties. Were Integra to build a residential housing development named Hidden Wolf in a different city, it could arguably claim that consumers would not be confused by the two marks. But given the close geographical proximity of the two properties, the Court finds this factor exacerbates the potential harm caused by consumer confusion because it lends credence to the false notion that the properties are associated.

### 3. Similarity of the Marks

The Ninth Circuit has developed three axioms to guide the similarity analysis: (1) marks must be considered in their entirety and as they appear in the marketplace; (2) similarity is adjudged in terms of appearance, sound, and meaning; and (3) similarities are weighed more heavily than differences. *GoTo.com*, 202 F.3d at 1206. Here, other than the common "wolf" element, the Hidden Wolf and Wolf Creek Marks are sufficiently different to avoid confusion if they were not in such close geographical proximity. But they are. Also, while the stylized wolf heads are similar, the Wolf Creek wolf is a front shot and the Hidden Wolf wolf is a profile. The font and typesetting are also distinct. While the differences in the logos favors Integra, the fact that the Marks are used in close proximity favors Paradise Canyon.

### 4. Evidence of Actual Confusion

Paradise Canyon submits no evidence of actual confusion. But, "[i]n the Ninth Circuit, evidence of actual confusion is not required to establish a violation." *Caesars World, Inc. v. Milanian*, 247 F. Supp. 2d 1171, 1199 (D. Nev. 2003) (citing *Acad. of Motion Picture Arts & Scis., v. Creative House Promotions, Inc.*, 944 F.2d 1446, 1457 (9th Cir. 1991)).

### 5. Marketing Channels Used

Both Parties agree that they market their products and services via the Internet. Paradise Canyon promotes the Wolf Creek Golf Club at golfwolfcreek.com and Integra promotes the Hidden Wolf development at hiddenwolfmesquite.com. Paradise Canyon contends that both

advertise in the same areas of Nevada and Utah. Integra asserts that while they market in similar areas, they market to different classes of consumers because most golfers will not be in the market for a new home. Paradise Canyon responds that while not all of its customers may be interested in purchasing a home, the large majority of Integra's home buyers are interested in playing golf at Wolf Creek Golf Club. The Court finds that Integra and Paradise Canyon market through similar channels and to same group of consumers. Both Parties market via magazines and the Internet, and both Parties direct their marketing at golfers.

### 6.     Type of Goods and Degree of Care Exercised by Purchaser

"In assessing the likelihood of confusion to the public, the standard used by the courts is the typical buyer exercising ordinary caution," and "when the goods are expensive, the buyer can be expected to exercise greater care in his purchases." *AMF*, 599 F.2d at 353. Here, given that Integra is selling residential building lots, the Court assumes that potential buyers will exercise a heightened degree of care. Consequently, the likelihood of long-term consumer confusion regarding Hidden Wolf's association with Wolf Creek Golf Club is diminished. Nevertheless, there is a high likelihood of initial interest and shorter-term confusion. Integra's use of the Wolf Creek Mark and images of the golf course appear calculated to lure potential customers to its Hidden Wolf development based on the strength and the good will of Paradise Canyon's Marks. Thus, "even [if] no actual sale is finally completed as a result of the confusion," Integra's use of Paradise Canyon's accumulated good will to attract consumers to its products is still infringement. *See Brookfield*, 174 F.3d at 1062.

Moreover, Integra's second advertisement, first shown to the Court at the March 13, 2008, Hearing, contains a disclaimer stating, "HIDDEN WOLF IS NOT AFFILIATED WITH WOLF CREEK GOLF CLUB." But the disclaimer is typeset in a tiny, yellow font that blends into the background picture. Even if that disclaimer were visibly typeset, however, Integra's use of the Wolf Creek Mark and pictures of the Wolf Creek Golf Club still create a substantial likelihood of confusion. The entire two-page spread is almost entirely a photograph of the golf course, and the

description of Hidden Wolf begins, "Welcome to Hidden Wolf , the exclusive residential community bordering Wolf Creek Golf Club and near six other immaculate courses in Mesquite."

### 7. Defendant's Intent in Selecting the Mark

The Parties dispute the real intentions of Integra in selecting their Hidden Wolf Mark. Paradise Canyon accuses Integra of attempting to profit on the Wolf Creek Mark, while Integra denies any improper intentions. Based on the proximity of the development to the golf course and Integra's deceptive advertising materials, the Court finds that Integra's selection of the word "wolf" and its use of a stylized wolf head were intended to approximate the Wolf Creek Mark.

### 8. Likelihood of Expansion of the Product Lines

Paradise Canyon submits a declaration stating that it has considered building homes within the Wolf Creek Golf Club and that it has already spoken with other Mesquite developers about potential partnership deals. As such, this factor favors Paradise Canyon.

### 9. Conclusion

An analysis of the *Sleekcraft* factors persuades the Court that Integra's Hidden Wolf Mark and its use of Paradise Canyon's Wolf Creek Mark and pictures of the Wolf Creek Golf Club in its promotional materials create a likelihood of consumer confusion. Accordingly, the Court finds that Paradise Canyon is likely to succeed on the merits of its federal trademark infringement and false designation of origin claims and grants its Motion for Preliminary Injunction.

**C. Rebranding**

At the March 13, 2008, Hearing, Integra repeatedly emphasized the cost of rebranding their development. The Court, however, finds that the use of the Hidden Wolf Mark on a property adjacent to Wolf Creek Golf Club creates a substantial likelihood of consumer confusion. Moreover, the Court has received no evidence that the cost of rebranding will be unusual or that Integra has made any sales dependent upon the use of a particular name.

**D.     Motions to Expedite Trial Date and for Jury Trial**

The Court is willing to entertain a motion to expedite the trial date and a motion for jury trial should the Parties be so inclined.

### CONCLUSION

Accordingly, and for good cause appearing,

IT IS HEREBY ORDERED that Defendant Integra's Motion to Dismiss (#18) is DENIED.

IT IS FURTHER ORDERED that Plaintiff Paradise Canyon's Motion for Preliminary Injunction (#9) is GRANTED as follows:

Defendants are HEREBY ENJOINED from using a mark containing the word "wolf" or an image of a wolf in connection with their land development now known as Hidden Wolf ("the Development").

Defendants are FURTHER ENJOINED from using photographs of the Wolf Creek Golf Club larger than one-sixteenth (1/16) of the total page size in their promotional materials for the Development.

Defendants are FURTHER ENJOINED from using language in their promotional materials that implies an association between the Development and the Wolf Creek Golf Club. This does not preclude, for the purpose of establishing location, language such as "next door to" or "within walking distance of" the Wolf Creek Golf Club.

Dated: March 17, 2008.

_____
ROGER L. HUNT
Chief United States District Judge